# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STRAGENT, LLC, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | C.A. No. 6:11-cv-00278-LED-JDL |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMAND** |
| BMW OF NORTH AMERICA, LLC *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

**DEFENDANTS BMW OF NORTH AMERICA, LLC AND BAYERISCHE MOTOREN WERKE AG'S MOTION FOR LEAVE TO AMEND THEIR ANSWER, DEFENSES, <u>AND COUNTERCLAIMS</u>**

Pursuant to Fed. R. Civ. P. 15(a)(2) and the Docket Control Order in this case ("DCO") (D.I. 191), BMW of North America, LLC ("BMW NA") and Bayersiche Motoren Werke AG ("BMW AG") (collectively "BMW") respectfully move the Court for leave to file an amended answer to assert inequitable conduct against Plaintiff Stragent, LLC. The DCO allowed defendants to add inequitable conducts allegations to their pleadings without leave before June 1, 2012. After such date, however, the DCO requires defendants to obtain leave of Court to add inequitable conduct allegations. As BMW has good cause to amend its answer, specifically that Stragent's inequitable conduct occurred after June 1, 2012, BMW respectfully requests that the Court grant BMW's motion for leave to amend its answer to add inequitable conduct allegations.

## I. BACKGROUND – IN THE REEXAMINATION PROCEEDINGS, STRAGENT HAS ACTED WITH INTENT TO DECEIVE THE PTO

### A. The PTO Has Rejected the Asserted Claims of Stragent's Patent

On April 2, 2012, BMW requested an *ex parte* reexamination of the asserted patent in this case, U.S. Patent No. 7,953,599 ("the '599 patent"). In the request, BMW argued that claims 1, 18, 38, 39, 41, 44, 58, 76, 77, 99, 113, 115, 120-124, 130-132, and 142, all of the claims asserted against BMW, were anticipated and/or rendered obvious by only four prior art references: (1) the Microsoft Voice Command User Guide ("Microsoft Voice Command") (Ex. 1); (2) the Microsoft Voice Command for Windows Media Player Help File ("Microsoft Plus") (Ex. 3); (3) BMW's Owner's Manual for the 645Ci Coupe (Ex. 3); and a translation of a German term paper by Simon Haegler *et al.* entitled "Voice Command for an Audio Device" ("Haegler") (Ex. 4). Based on three of these four references, the PTO granted BMW's request on May 17, 2012 (Ex. 5) and, on August 7, 2012, issued an Office Action rejecting every claim subject to the request (that is, every claim asserted against BMW). Ex. 6. Specifically, the PTO found that Microsoft Voice Command anticipates claims 1, 18, 38, 39, 41, 44, and 58 and Microsoft Plus

1

anticipates claims 1, 18, 39, 41, 44, and 58. Additionally, the PTO additionally found that BMW's Owner's Manual in view of Microsoft Voice Command and, separately, in view of Microsoft Plus, renders obvious claims 76, 77, 99, 113, 115, 120-124, 130-132, and 142.[1]

On October 9, 2012, Stragent responded to the PTO's rejection by attempting to distinguish its claims over the clear disclosures in the prior art. Ex. 8. For example, Stragent's main argument with respect to independent claims 1 and 41 and their dependent claims is that the prior art's disclosure of grouping music by artist or playlist somehow fails to teach the claimed "computer code for initializing a plurality of program variables stored in the memory, the program variables including at least one of artists, songs, or playlists" (Ex. 8, at 4-8), despite the Examiner's explicit statement that "initializing" program variables is "inherently . . . a prerequisite for recognizing particular artists [or "various commands, including uttered track numbers"]." Ex. 5, at 10-11. And, with respect to claim 76 and its dependent claims Stragent argued that "any attempt to combine" the Microsoft references with the BMW Owner's Manual "would clearly render an inoperable system and be improper," completely ignoring the simple fact that the prior art references are all computer software programs, features of which could easily and readily be combined by any competent computer programmer. *See* Ex. 8, at 10-11.

Without addressing Stragent's arguments, on December 19, 2012, the PTO informed Stragent that the October 9 amendment was defective for failing to include proof of service, so Stragent resubmitted a nearly-identical amendment on January 26, 2013. Ex. 9. The PTO has

---

[1] The PTO did not consider the Haegler reference in the reexamination on the basis that the initial request did not include sufficient evidence to establish that Haegler qualifies as a prior art printed publication. To establish that Haegler is, indeed, prior art, on June 18, 2012, BMW filed a petition to the PTO including a declaration from Dr. Harald Romsdorfer, who supervised the writing and publication of the term paper, establishing that Haegler was publically available on his website at least as early as February 12, 2005. *See* Ex. 7 (BMW's Petition and Exhibits). However, the PTO did not accept the petition because of the *ex parte* nature of the proceeding.

not addressed Stragent's October 9, 2012 and/or January 26, 2013 arguments as of the filing hereof.

### B. Stragent Took Inconsistent Positions Before the PTO and This Court

In the October 9, 2012 and January 26, 2013 responses to the PTO, Stragent made arguments fundamentally at odds with the claim construction positions that Stragent submitted to this Court in its Opening Claim Construction Brief ("Opening Brief") (D.I. 346). Specifically, Stragent's Opening Brief argues that the '599 patent uses the terms "and" and "or" interchangeably, inconsistent with their ordinary meanings (thus, "and" can mean "or"), while Stragent's responses to the PTO insist that the '599 patent uses "and" and "or" in completely distinct ways, consistent with their ordinary meanings (thus, "and" is different from "or").[2] *See* D.I. 359, at 1-3. BMW[3] informed the Court of this inconsistency in its February 13, 2013 Motion for Leave to File a Sur-Reply Claim Construction Brief (D.I. 358) and corresponding Sur-Reply (D.I. 359.) BMW's briefs notes that, as the MPEP requires patent holders to disclose to the PTO "any assertion that is made during litigation which is contradictory to assertions made to the examiner" (MPEP § 2000.6(c) (citing *Environ Prods., Inc. v. Total Containment, Inc.*, 43 USPQ2d 1288, 1291 (E.D. Pa. 1997)), Stragent must disclose inconsistencies in legal positions before this Court and the PTO, including Stragent's inconsistent Opening Brief, to the PTO. Nonetheless, Stragent did not make any disclosure to the PTO after receiving BMW's briefs.

---

[2] The fundamental difference in the meanings of "and" and "or," that Stragent attempted to dispute during claim construction, is the subject of a national advertising campaign for Ford, which presents a humorous face to this claim construction issue before the Court. *See, e.g.,* http://www.youtube.com/watch?v=ITi_vKDgWfI&list=PLCFM1h5Oz66irDEt0LQhEM2LQp49HR-su.

[3] On May 8, 2013, the Court severed Chrysler Group, LLC ("Chrysler") and Mercedes-Benz USA, LLC ("Mercedes") from this case. Prior to that date, BMW, Mercedes, and Chrysler filed claim construction briefs together as co-defendants in this case, but, for simplicity, BMW will refer to the co-defendants joint claim construction briefing from this case as "BMW's."

### C. Stragent Acted with Intent to Hide Information from the PTO

Despite the notice provided in BMW's briefs, Stragent has taken the position that it had no duty to disclose its Opening Brief to the PTO in its subsequent claim construction briefing (*See* Plaintiff's Opposition to Defendants' Motion For Leave to File a Sur-Reply Brief (D.I. 360)) and at the claim construction hearing itself, which occurred on February 28, 2013. But, on March 4, 2013, Stragent then *selectively* submitted to the PTO not only its Opening Brief, which contained Stragent's inconsistent statements, but also Stragent's Opposition to BMW's Motion for Leave (D.I. 360) and Response to BMW's Sur-Reply Brief (D.I. 362), both of which attempted to justify the inconsistencies in the positions Stragent had taken. Ex. 10 (Stragent's March 4, 2013 PTO Submission). But, Stragent only submitted some of the relevant briefing, omitting relevant claim construction materials from this case (including, BMW's briefing on the very same issues and Judge Love's preliminary claim constructions). Indeed, Stragent provided the PTO with its Opening Brief and its responses to BMW's briefs, but conspicuously and knowingly omitted all of BMW's briefs in a clear and improper attempt to sway the Examiner.

Moreover, despite the fact that this issue was predominately raised in the claim construction briefing and at the claim construction hearing, Stragent never corrected the omission. Instead, to ensure that the PTO had the full set of claim construction papers submitted, and to address Stragent's improper attempt to influence the Examiner's consideration of the reexamination, BMW submitted all the claim construction materials from both parties to the PTO on March 20, 2013. BMW informed the Court of the submissions two days later, on March 22, 2013. D.I. 366. The table below contrasts the one-sided materials Stragent submitted to the PTO against the complete set of materials (including those that Stragent intentionally omitted).

| **Materials in Stragent's PTO Submissions – Only Its Biased Briefs** | **Materials Intentionally Omitted from Stragent's PTO Submissions – All Materials Adverse to Stragent's Positions** |
|---|---|
| 1. Stragent's Opening Claim Construction Brief (D.I. 346)<br><br>2. Stragent's Opposition to Defendants' Motion for Leave to File a Sur-Reply Claim Construction Brief (D.I. 360)<br><br>3. Stragent's Response to Defendants' Sur-Reply Brief (D.I. 362) | 1. Parties' Joint Claim Construction and Prehearing Statement (D.I. 339)<br><br>2. BMW's Responsive Claim Construction Brief (D.I. 352)<br><br>3. BMW's Motion for Leave to File Sur-Reply Brief (D.I. 358)<br><br>4. BMW's Sur-Reply Brief (D.I. 359)<br><br>5. BMW's Technical Tutorial<br><br>6. Judge Love's Preliminary Claim Constructions |

*INTENTIONAL OMISSIONS*

### D. Stragent's Inequitable Conduct Continues in Related Prosecution

Despite BMW's corrective action in the reexamination,[4] Stragent has continued its attempts to deceive the PTO. Specifically, on March 26, 2013, Stragent again submitted only its one-sided briefs to the PTO, this time in the prosecution of the U.S. Patent App. No. 13/090,225 (the "'225 application"), a continuation application to the '599 patent. *See* Ex. 11 (March 26, 2013 Information Disclosure Statement), at 5. After learning of Stragent's continued impropriety in its dealings with the PTO, BMW informed Stragent's prosecution counsel, Patrick Caldwell (with a copy to Stragent's litigation counsel, Eric Albritton), that Stragent's continuing improper actions constituted inequitable conduct and, if Stragent did not take immediate corrective action in the prosecution of the '225 application (i.e., by submitting the **complete** set of claim construction briefing materials from both parties), it would be in violation of the ethical rules. *See* Ex. 12 (April 16, 2013 Letter from L. Lavenue to P. Caldwell). Stragent has since

---

[4] Note that, due to the *ex parte* nature of the pending reexamination proceeding, there is no guarantee that the PTO will consider BMW's submission, just as the PTO refused to consider BMW's submission of a declaration regarding the Haegler reference, which is discussed above.

failed to respond to BMW's letter and refused to provide the PTO with the required materials.

Further, this ongoing impropriety in the prosecution of the '225 application also taints the '599 patent, augmenting BMW's inequitable conduct assertions.[5] *See, e.g., Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808-12 (Fed.Cir.1990) (finding that inequitable conduct during prosecution of one patent rendered three related patents equally unenforceable).

## II. LEGAL STANDARDS – WHEN GOOD CAUSE IS SHOWN, SUCH AS HERE, THEN LEAVE TO AMEND SHOULD BE FREELY GIVEN

The Federal Rules state that leave to amend an answer to add an affirmative defense should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a). "The decision whether justice requires amendment is committed to the discretion of the district judge." *Ion, Inc. v. Sercel, Inc.*, No. 5:06-CV-236-DF, at 3 (S.D. Tex. October 7, 2009) (D.I. 301, Amended Order Granting Defendant's Motion for Leave to File Amended Answer and Counterclaims) (Ex. 13) (citing *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982)).

When there is a justification, the grant of leave to amend is generally favored, but may be denied if there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.; see also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998).

Pursuant to Rule 16(b), the district court must enter a scheduling order limiting the time to amend the pleadings (Fed. R. Civ. P. 16(b)), but the schedule may be modified, if the movant shows good cause and obtains the judge's consent. *Id.* Moreover, the Rule 16(b) "good cause

---

[5] Stragent is also actively prosecuting U.S. Patent App. No. 12/104,195 (the "'195 application"), a continuation of U.S. Patent No. 7,424,431, the parent to the '599 patent, although the PTO has not taken action on this other application since June of 2011. Still, Stragent's duty to disclose the material claim construction briefings from this case extend to that application, and, as expected, Stragent has not submitted any information from this case in that prosecution.

6

standard requires the 'party seeking relief to show that the deadlines in the scheduling order cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright et. al., Federal Practice and Procedure § 1522.1, at 231 (2d ed. 1990)).  Yet, after demonstrating good cause to modify the scheduling order, the "liberal standard of Rule 15(a) applies" to the decision to grant or deny leave. *Id.*

### III. BMW HAS ESTABLISHED "GOOD CAUSE" UNDER RULE 16 TO AMEND ITS ANSWER TO ASSERT INEQUITABLE CONDUCT

To determine whether "good cause" has been shown, a court considers four factors: (1) the explanation for the failure to timely move for leave or amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Ion, Inc.*, No. 5:06-CV-236-DF, at 3-4 (Ex. 13); *S&W Enters.*, 315 F.3d at 536 (citations omitted).  BMW satisfies these factors for leave to amend.

#### A. Factor One: Stragent's Inequitable Conduct Occurred After the Deadline to Amend its Pleadings, Explaining the Failure to Amend

The first factor in determining whether leave to amend should be granted is the explanation for the failure to move for leave or amend within the deadline.  BMW's explanation for failing to amend is simple; Stragent's inequitable conduct occurred months after the DCO's June 1, 2012 deadline for adding assertions of inequitable conduct without seeking leave.  Indeed, Stragent's inequitable conduct occurred in its submissions to the PTO during the reexamination of the '599 patent and the prosecution of the continuation '295 applications, which were dated October 9, 2012 and/or January 26, 2013 (well after the June 1, 2012 deadline).  Thus, BMW could not have added this defense earlier.  Indeed, even Stragent's latest improper attempt to influence the Examiner in the '295 application did not take place until March 26, 2013, and BMW only refrained from seeking leave to amend immediately thereafter in a good faith effort to allow Stragent a reasonable amount of time to take corrective action on

7

its own. *See* Ex. 12. As recently as May 24, 2012, BMW gave Stragent another chance to remedy the inequitable conduct (during the meet and confer process), but counsel for Stragent flatly refused to take action. Accordingly, BMW's explanation favors granting leave to amend.

### B.  Factor Two:  BMW's Requested Amendment is Vital as Stragent's Inequitable Conduct Renders the '599 Patent Unenforceable

The second factor in determining whether leave to amend should be granted is the importance of the amendment. Allowing BMW's amendment could render the '599 patent entirely unenforceable. Of course, it is clear that "[i]nequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). And, "unlike validity defenses, which are claim specific, see 35 U.S.C. § 288, inequitable conduct regarding any single claim renders the entire patent [including all claims] unenforceable. . . . Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Id.* at 1288 (internal citations omitted). Therefore, denial of BMW's amendment would preclude BMW from raising the well-accepted affirmative defense of inequitable conduct, *Ion, Inc.*, No. 5:06-CV-236-DF, at 7 (Ex. 13), and the egregious facts of the inequitable conduct committed by Stragent further favor amendment. Accordingly, the importance of the amendment also favors leave to amend.

### C.  Factor Three:  There Is No Prejudice Here to Allowing Amendment

The third factor in determining whether leave to amend should be granted is potential prejudice in allowing amendment. As Stragent will not be prejudiced by allowing BMW's amendment, either by delay in the case or by being deprived of the opportunity to present evidence if the amendment had been filed earlier, this factor neither favors nor disfavors leave. First, BMW's affirmative defense of inequitable conduct will not affect the time of discovery or

8

require a continuance that could delay the case, as the discovery deadline is not until September 6, 2013. *See S&W Enters.*, 315 F.3d at 535. As discovery is still open, Stragent will be free to seek any evidence it may need to defend BMW's new allegation based on Stragent's new inequitable conduct. *See Arthur v. Maersk, Inc.,* 434 F.3d 196, 206 (3d Cir. 2006) (finding that there is no prejudice unless the non-moving party "was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendment [ ] been timely"). Second, BMW's amendment will not affect the trial schedule, currently set to begin on February 10, 2014, so Stragent will also not be prejudiced by any delayed trial date. *See S&W Enters.*, 315 F.3d at 535. Third, and finally, as no motions for summary judgment have been filed so far, there is no presumption that allowing an amendment will be prejudicial. *See Conklin v. Novartis Pharmas. Corp.* 2012 WL 4127295, *5 (E.D.Tex. 2012) (citing *Little v. Liquid Air Corp.,* 952 F.2d 841, 846 (5th Cir.1992) ("When a party seeks leave after the filing of a motion for summary judgment, there is likely to be disruption to the proceedings and prejudice to the other party"). Indeed, BMW would be prejudiced by <u>not</u> allowing the amendment, as it would be prejudicial to prohibit BMW from asserting an affirmative defense of inequitable conduct simply because Stragent committed that conduct after the DCO's deadline for asserting the defense. In fact, such a result would encourage patent holders to deceive the PTO, as Stragent attempted to do, so long as the deadline for asserting inequitable conduct in related litigations had passed. Accordingly, this third factor neither favors nor disfavors leave.

### D. Factor Four: No Continuance is Necessary for BMW's Amendment

The fourth and final factor in determining whether leave to amend should be granted is the availability of a continuance to cure any potential prejudice. As discussed with respect to factor three above, Stragent will not be prejudiced by allowing BMW's amendment and, thus, there is no need for a continuance to cure any prejudice. Moreover, a continuance will not be

necessary for the additional reason that BMW's amendment will not delay any deadlines in the case in the first place. Accordingly, the fourth factor neither favor nor disfavors leave to amend.

## IV. UNDER RULE 15, JUSTICE REQUIRES ALLOWING NON-FUTILE AMENDMENTS, AND BMW'S AMENDMENT IS SURELY NON-FUTILE

Under Rule 15, a motion for leave to amend should only be denied if the amendment would be futile. *Ion, Inc.*, No. 5:06-CV-236-DF, at 7-8 (Ex. 13) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). An amendment is futile if it would fail to state a claim upon which relief could be granted. *Ion, Inc.*, No. 5:06-CV-236-DF, at 8 (Ex. 13) (citing *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). Courts apply the Rule 12(b)(6) standard of legal sufficiency to determine if an amendment is futile. *Id.* Accordingly, courts may not dismiss a motion for leave unless it appears beyond doubt that the movant can prove no set of facts in support of its claim which would entitle it to relief. *Ion, Inc.*, No. 5:06-CV-236-DF, at 8 (Ex. 13) (citing *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000)). Pleadings must include facts sufficient to "state a claim to relief that is plausible on its face," but "heightened fact pleading of specifics" is not required. *Ion, Inc.*, No. 5:06-CV-236-DF, at 8 (Ex. 1) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). BMW's amendment sets forth specific facts establishing a well-supported assertion of inequitable conduct and leave should thus be granted.

### A. BMW Will Plead Facts Sufficient to Support a Claim: Repeated Attempts to Deceive the PTO by Withholding Information Is Plainly Inequitable Conduct

BMW's amended answer will plead facts that Stragent committed inequitable conduct in the reexamination of the '599 patent and the prosecution of the '225 application, and thus, BMW's amendment is not futile. The Federal Circuit established that "[t]o prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant

misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense,* 649 F.3d at 1287. "Intent and materiality are separate requirements." *Id.*

As for intent, intent to deceive the PTO is established when the accused infringer proves that "the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* (internal citations omitted). And even absent direct evidence of deceptive intent, specific intent to deceive is established if it is "the single most reasonable inference able to be drawn from the evidence." *Id.* (internal citations omitted). But, under the facts here, BMW can clearly support a pleading that Stragent knew of the references (the claim construction materials from this case), knew that they were material, and made a deliberate decision to withhold them from the PTO. There can be no doubt that Stragent *intentionally* decided *not* to submit the material to the PTO.

As for materiality, the Federal Circuit has dictated that "[t]he materiality to establish inequitable conduct is but-for materiality." *Id.* at 1291-92. In other words, material withheld from the PTO, like the briefs that Stragent intentionally withheld here, are material, if this Court finds that the PTO would not have granted the patent (or, presumably, reversed an initial Office Action rejecting the claims in reexamination) but for the applicant's failure to disclose the briefs. *Id.* at 1296. On remand, the district court in the *Theresense* case further explained that an omission of briefs that leads to (or would lead to) the allowance of the patent-at-issue is but-for material. *Therasense, Inc. v. Becton, Dickinson & Co.*, 864 F. Supp. 2d 856, 860 (N.D. Cal. 2012). And, even if the omitted information is not material, the misconduct itself is material if the applicant "deliberately planned and carefully executed scheme[s] to defraud the PTO and the court." *Therasense,* 649 F.3d at 1287 (Fed. Cir. 2011) (internal citations omitted). Thus, again,

11

BMW will clearly plead a set of facts that the briefs at issue are material, warranting leave to amend.

Indeed, Stragent's actions in this case, which are provided sequentially below, more than satisfy the standard of pleading sufficient facts to support a claim for inequitable conduct:

- December 21, 2012 – Stragent files its Opening Brief in this Court. D.I. 346.

- January 26, 2013 – Stragent submits arguments to PTO in the reexamination of the '599 patent that contradict positions in its Opening Brief. Ex. 9.

- February 13, 2013 – BMW informs Stragent and the Court that the patent rules require Stragent to disclose its Opening Brief to the PTO because of the inconsistencies. D.I. 358 and D.I. 359.

- February 22, 2013 – Stragent claims that is has no duty to disclose its Opening Brief to the PTO and refuses to advise the PTO of the inconsistencies. *See* D.I. 360 and D.I. 362.

- March 4, 2013 – Stragent submits its Opening Brief to the PTO in the reexamination, along with two of Stragent's additional briefs that attempt to justify its inconsistent arguments. Stragent omits <u>all</u> of BMW's claim construction briefing and the Court's preliminary claim constructions. Ex. 10 (Stragent's March 4, 2013 PTO Submission).

- March 20, 2013 – BMW submits <u>all</u> claim constructions materials from both parties to the PTO in reexamination to correct the prejudice caused by Stragent's improper submission, although it is unclear if the PTO will accept the submission. *See* D.I. 366.

- March 22, 2013 – BMW provides the Court with notice of both parties' PTO submissions. D.I. 366.

- March 26, 2013 – Stragent again improperly submits only its one-sided briefings to the PTO, this time in the prosecution of the continuation application to the '599 patent.[6] Ex. 11 (March 26, 2013 Information Disclosure Statement), at 5.

- April 16, 2013 – BMW informs Stragent via letter that its improper submissions in the reexamination and continuation constitute inequitable conduct and that failure to take immediate corrective actions will further violate the ethical rules. Stragent has since

---

[6] Note that, unlike in the reexamination, there is no possible procedure for BMW to try and cure Stragent's improper and prejudicial submission in the prosecution of the continuation application by independently providing the PTO with all claim construction materials. BMW may only remedy Stragent's improper actions by asserting inequitable conduct in this case.

failed to respond to BMW's letter and to correct its biased submissions to the PTO. Ex. 12 (April 16, 2013 Letter from L. Lavenue to P. Caldwell).

- May 24, 2013 - In a meet and confer, BMW again asks Stragent to remedy the inequitable conduct in the in the reexamination and continuation, but Stragent refuses, thus necessitating the filing of this motion for leave to assert inequitable conduct.

In the context of these actions, Stragent unquestionably intended to deceive the PTO by selectively submitting some, but not all, of the claim construction briefs to the Examiner. As explained above, BMW informed Stragent that, because Stragent's Opening Brief containing arguments contradicting those it made to the PTO, the duty of disclosure required Stragent to submit the Opening Brief in the reexamination of the '599 patent. But, instead of just submitting the Opening Brief, Stragent attempted to coerce the PTO into agreeing with its positions by submitting only some of the briefing (Stragent's one-sided, post hoc explanations of its contradictory arguments) and hiding the other briefing (BMW's briefs challenging Stragent's contradictory arguments) from the PTO. There can be no other conclusion but that Stragent was attempting to deceive the PTO.

Yet, Stragent's inequitable conduct did not stop there. Despite BMW's immediate corrective action in the reexamination – providing the PTO with <u>all</u> the claim construction materials from this case and informing the court of both parties' submission (which may or may not be considered by the PTO in the reexamination) – Stragent again chose to submit only its biased briefs to the PTO again, this time in the prosecution of the '225 application.[7]

---

[7] Additionally, Stragent cannot now remedy its inequitable conduct by merely submitting the full claim construction briefing to the PTO in the reexamination (as it is not certain if BMW's *ex parte* submission will be considered) and in the continuation application. Indeed, neither the reexamination nor the continuation application can proceed unless Stragent discloses these inequitable conduct charges to the PTO. *See* MPEP § 2000.6(c) (Examples of material information from related litigations that must be disclosed to the PTO include "'allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure'"). Thus, if Stragent concedes and agrees to remedy its actions, Stragent must also submit this motion, which outlines its clear
(continued…)

13

### B. BMW Will Plead Facts Plead Facts Sufficient to Support a Claim: Facts Here Also Shows a Deliberate, Planned, and Executed Scheme to Defraud the PTO

Stragent's repeated inequitable conduct in the face of BMW's corrective action also evidences a "deliberately planned and carefully executed scheme[s] to defraud the PTO and the court" that itself constitutes but-for materiality. *Therasense,* 649 F.3d at 1287 (Fed. Cir. 2011) (internal citations omitted). Stragent knowingly tried to prejudice the Examiner by omitting adverse materials from this case in its submissions to the PTO on not one, but two separate occasions, both of which in isolation constitute inequitable conduct. Moreover, Stragent's second self-serving submission did not occur until after BMW painstakingly attempted to correct prejudice caused by the first, making Stragent's action even more egregious. Further compounding this improper conduct, Stragent still refuses to submit all the materials from this case to the PTO. Thus, Stragent's intentional, repeated, and continuing attempts to influence the PTO constitute inequitable conduct, regardless of the materiality of Stragent's omissions, and allowing BMW's to amend its pleading to assert inequitable conduct would not be futile at all.

### V. CONCLUSION - BMW SHOULD BE ALLOWED TO ASSERT INEQUITABLE CONDUCT

From the onset of this case, BMW has repeatedly informed Stragent that BMW does not infringe the '599 patent, and that the '599 patent is invalid based on BMW's (and other) prior art. *See e.g.,* D.I. 239 (BMW's Motion to Strike Plaintiffs' Infringement Contentions), at 2-5; Ex. 14 (November, 29, 2011 Letter from L. Lavenue to E. Albritton). Rather than engage in meaningful dialogue about the merits of the case, however, Stragent has continuously attempted to obfuscate

---

(…continued)
inequitable conduct. Further, if Stragent does attempt to ameliorate the inequitable conduct, BMW also requests fees and costs for the submission of this motion, as Stragent has previously flatly refused to comply with BMW's requests for remedial action without court intervention.

14

its assertions against BMW and dodge the substance of this litigation, avoiding reason and compromise at nearly every turn. For example, Stragent muddled its initial infringement contentions and refused to amend them by agreement, forcing BMW to file a motion to strike before Stragent would commit to clear allegations. *See* D.I. 239. Similarly, Stragent avoided BMW's request for an early resolution of this case (D.I. 287-1, BMW's Letter Brief Requesting an Early Markman Hearing) by claiming that Stragent lacked evidence to support their infringement allegations (D.I. 288-1). But, Stragent has since failed to request any of that third-party evidence and, indeed, has even failed to inspect all of the evidence BMW made available. *See* D.I. 375 at 4-5. Clearly, Stragent is merely using litigation itself as a weapon against BMW.

The inequitable conduct now at issue is entirely consistent with Stragent's improper litigation strategies, where litigation itself is a weapon. During the reexamination of the '599 patent, Stragent made arguments to the PTO wholly inconsistent with the very same claim construction arguments that Stragent made to this Court. As a result, BMW requested that Stragent reveal these inconsistent arguments to the PTO to comply with its duty of disclosure. After initially indicating that it had no such duty, Stragent submitted one-sided briefs to the PTO in the reexamination of the '599 patent, purposefully omitting other relevant claim construction materials. Furthering its inequitable conduct, Stragent repeated the exact same prejudicial submission to the PTO in the prosecution of the '225 application. These repeated, deliberate attempts to influence the PTO constitute inequitable conduct rendering the '599 patent unenforceable. Accordingly, BMW respectfully requests that the Court grant BMW's motion for leave to file an amended answer to assert the affirmative defense of inequitable conduct.

Dated: June 5, 2013                                 Respectfully submitted,

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue - Lead Attorney
Virginia Bar No. 49005
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

R. Benjamin Cassady
Virginia Bar No. 78343
ben.cassady@finnegan.com
Finnegan, Henderson, Farabow,
 Garrett & Dunner, LLP
901 New York Ave., NW
Washington, D.C. 20001
(202) 408-4000 (telephone)
(202) 408-4400 (facsimile)

Melvin R. Wilcox, III
Texas Bar No. 21454800
mrw@yw-lawfirm.com
Yarbrough & Wilcox, PLLC
100 E. Ferguson Street
Tyler, Texas 75702
(903) 595-1133 (telephone)
(903) 595-0191 (facsimile)

***Attorneys for Defendants BMW of North America, LLC and Bayersische Motoren Werke AG***

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule CV-5(c), the undersigned certifies that all counsel of record have been served with a true and correct copy of the foregoing sealed document and all exhibits thereto by email on this 5th day of June, 2013.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue

**CERTIFICATE OF CONFERENCE**

The parties have complied with Local Rule CV-7(h).  Counsel for both BMW and Stragent met and conferred by telephone on May 24, 2013.  Communications were exchanged between Lionel M. Lavenue, Ben Cassady, and Melvin R. Wilcox, III for BMW, and David Wooten and Leisa Peschel for Stragent.  Although discussions were conducted in good faith, no agreement was reached, and Stragent opposes this motion.  Thus, the issue remains open for the Court to resolve.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue